ALFRED ELDRIDGE, Plaintiff, *v.* THE ATLAS STEAM-
SHIP COMPANY, Defendant.

*Injury to a sailor using a winch machine with unguarded cogs — liability of the
steamship company therefor.*

In an action to recover damages for injuries arising from the use by the plaintiff
of a winch machine, the cog-wheels of which were unguarded, it appeared that
the plaintiff had shipped on board the defendant's vessel, and having been
ordered to use the machine necessarily in using it extended his hand over the
unguarded cog-wheels by which the injury was occasioned.

*Held,* that as he could not refuse, without danger of punishment, to work the winch,
when commanded to do so, his exposure was not a voluntary one on his part.

That, whether he was guilty of contributory negligence or not, in view of his
ignorance of the character of the winch, whether safe or dangerous when he
accepted employment, and of his compulsory service at a dangerous machine
resulting from the peculiar character of his contract and its duties and obliga-
tions, and of the defendant's apparent negligence in leaving the winch uncovered,
was a question for the jury.

Motion by the plaintiff for a new trial, upon exceptions ordered
to be heard in the first instance at the General Term, after a
trial at the New York Circuit, before the court and a jury, on
May 22, 1888.

*Chauncey Shaffer* and *Jacob Fromme,* for the plaintiff.

*Lawrence Godkin,* for the defendant.

Brady, J.:

This action was brought to recover for personal injuries sustained
by the plaintiff by reason of the alleged negligence of the defendant.

Upon the trial the complaint was dismissed and the exceptions
directed to be heard in the first instance at the General Term. It
appeared that on the 9th of November, 1886, the plaintiff shipped
on the Alvena as an able-bodied seaman, and went on board the ship
on the morning of the tenth. The vessel was bound from New
York to Kingston. There were on board three winches, machines
for the purpose of removing the cargo. In winches Nos. 1 and 2
the cog-wheels were covered, and, therefore, guarded. They were
not in No. 3, and, therefore, were unguarded. In using the
machine it was necessary for the man attending it to extend his

hand over the cogs to reach a lever which was a necessary working part of the machine.

On the twenty-third of November, the Alvena, then at Aspinwall, was hauled along side of the Athos to ship its cargo to that vessel. The plaintiff was ordered by the chief officer to drive winch No. 3, although it was not covered, as we have seen, and, therefore, in a dangerous condition. When the plaintiff boarded the Alvena he knew nothing of the construction of the vessel, or of her winches, and never was on board of her before. Whilst working the winch he had to reach over the cogs to get the lever to reverse, and at the same time was compelled to shut off the steam and look for the signal from the commanding officer and come back, and while thus engaged his left hand was caught in the cogs and three of his fingers cut off. All the winches on the vessel (except No. 3) were guarded by a cover, as already suggested, which was permanent, screwed down, the object of which was to protect the hand from being injured by the cogs.

The plaintiff having shipped on board the vessel was bound to obey orders, and could not refuse, without danger of punishment, to work the winch as commanded. His exposure was not, therefore, voluntary, except so far as that might be inferred from his shipping as a seaman on board the vessel. And herein lies the plaintiff's right of action if any exist under the authorities.

It seems to be well settled that the defendant is not bound to supply a machine which is absolutely safe or which contains the latest improvements, and that an employee in accepting service with a knowledge of the character of the machine the dangers of which are apparent, assumes the risk incident to the employment and cannot call upon the defendant to make alterations to secure greater safety, or recover for injuries arising from service under such conditions. (*Hickey* v. *Taaffe*, 105 N. Y., 26; *Gibson* v. *Erie*, 63 id., 449; *Buckle* v. *G. P. and R. M. Co.*, 113 id., 540.) But in those cases the employment was upon the machine directly, which was seen at the time of the employment, and, therefore, apparent and its defects and dangers visible. But here the defendant shipped without any knowledge whatever of the character of these winches, and his obligations were such that a refusal to work them when commanded would necessarily involve serious consequences to him

He was bound to obey orders which were lawful, that is not *mala per se* or *mala prohibita*, and for a refusal would have forfeited his wages or be punished. (1 Pars. on Maritime Law, 466; U. S. R. S. [2d ed., 1878], § 4596, p. 890.)

The general rule, as stated in *Sweeney* v. *Berlin, etc., Co.* (101 N. Y., 524), is that the servant accepts the service subject to the risks incidental to it, and where the machinery and implements of the employer's business are at that time of a certain kind and condition, and the servant *knows it*, he can make no claim upon the master for other or different safeguards  Under such circumstances, the servant is regarded as voluntarily taking the risks resulting from the use of the machinery, unless the master by urging on the servant, or coercing him into danger, or in some other way, directly contributes to the injury.

Under the facts disclosed the plaintiff had no alternative but to obey; and whether he was guilty of contributory negligence or not, particularly when it is considered that the other winches were covered and the workmen protected from injury, if, indeed, that question is at all presented in this case, was one at least for the jury to determine. This view is predicate of the ignorance of the plaintiff of the character of the winches, whether safe or dangerous when he accepted employment, and his compulsory service at a dangerous machine resulting from the peculiar character of his contract and its duties and obligations, and of the defendant's apparent negligence in leaving the winch uncovered, a precaution, the utility and necessity of which seems to have been conceded by the use of the covering on similiar machines on board the same vessel.

We think that there must be a new trial. with costs to plaintiff to abide the event.

DANIELS, J., concurred; VAN BRUNT, P. J., concurred in result.

New trial granted, with costs to the plaintiff to abide event.