107 So.2d 609 (1958)
Mrs. Josephine CLARK, by her husband and next friend, Dallas G. Clark, and Dallas G. Clark, Individually, Appellants,
v.
CHOCTAWHATCHEE ELECTRIC CO-OPERATIVE, Inc., a corporation, Appellee.
Supreme Court of Florida.
November 26, 1958.
Rehearing Denied January 14, 1959.
Adams & Wade, Crestview, for appellants.
A.G. Campbell, Jr., De Funiak Springs, for appellee.
*610 THOMAS, Justice.
In this case notice of appeal was filed before 1 July 1957, and the court, pursuant to Sec. 26(6) of Article V of the Constitution as amended 6 November 1956, F.S.A., elected to retain the cause for decision. It should be noted that the transcript was filed 25 March 1958, and the final brief 13 August 1958. The case was orally presented to this court 29 October 1958.
At the time of the incident which gave rise to this litigation, the appellant, Mrs. Josephine Clark, was the operator of a gasoline service station. Close by the property, the appellee maintained a high power line carrying 7,200 volts of electricity. While the employees of appellee were attempting to repair the line, without breaking the circuit, and this appellant was ironing in the adjacent building, something gave way so that the line fell striking the pumps and putting them out of commission, causing actual damage to certain property at the station as will be seen from the part of the judge's order presently quoted, discharging electrical current in the immediate area, and setting fire to the woods some distance away.
When this occurred, the appellant, who was in the building near the pumps, saw a blinding flash that lighted the whole station with "blue fire," heard a loud report, and felt a shock. Her tongue thickened, her legs began to ache, then buckled, and she fell to the ground. She was taken to the hospital about eleven o'clock in the morning and remained there until evening. Her legs continued to hurt and in her body there was a burning sensation so intense that she could not go near a stove or heater. As she described her condition, she was "just burned up, my face and hands." She then consulted physicians in a distant town, one or the other of whom evidently treated her for a considerable period. At the time of the trial, she had not sufficiently recovered fully to resume her operation of the filling station and she was still suffering discomfort in her legs. Although she had before the episode been active in raising her four children, doing her housework and running the filling station between times, her actions were greatly curtailed afterwards. Such, in brief, was appellant's story which the jury was entitled to believe, and did.
The jury returned a verdict for $10,000, in favor of Mrs. Josephine Clark, and $2,000 in favor of her husband, Dallas G. Clark, who claimed damages for loss of his wife's services.
At the close of all the evidence in the case, the appellee offered a motion for a directed verdict for the defendant, which the court took under advisement. A few days after the verdicts were returned, the appellee moved, pursuant to Rule 2.7, 1954 Rules of Civil Procedure, 31 F.S.A., that the court enter a judgment in its favor "in accordance with its motion for a directed verdict" or that the court grant a new trial.
The trial judge concluded that in the circumstances he related, to which we shall presently refer while digesting his final order, the appellants were entitled to a judgment for one dollar and that to such extent the motions for a directed verdict and for a new trial were denied. He considered the evidence sufficient to prove damages to property located "in and about the service station * * * (e.g., the fuse box, water can, light bulbs and gas pumps)," although the monetary loss was not established.
In his order, painstakingly prepared, the judge found that the appellants had failed to establish "direct physical impact or trauma," which he considered indispensable to their recovery for injury to Mrs. Clark. He reviewed that part of the testimony of this appellant about the effect of the incident on her tongue, ears and legs. He quoted her testimony that she didn't know whether or not she had had an electrical shock; that she didn't know what an *611 electrical shock was; that she had never had one; and that she received no burns. The judge quoted, too, the statement of one of the physicians that he had sent the patient to the other doctor because he thought her emotional and mental balance had been upset by the experience, although he had not eliminated the possibility of physical injury. The physician found no burns on the body of the patient, but he thought emotional disturbance could be caused by electrical shock. The quoted testimony closed with the statement that the patient's symptoms could have resulted from electrical shock.
The court held no doubt that an electrical shock "transmitted [to the body of the appellant] in a reasonably forseeable manner" would constitute a direct physical impact and support a claim both for the physical injury and the resulting emotional disturbance, and further that if the emotional disturbance produced symptoms, such as paralysis, she could recover for these resulting physical injuries. But apparently because the appellant said she did not know whether or not she received an electrical shock  we interpolate, not having received one,  he deduced that the sensations and symptoms experienced immediately after the incident arose from fright and not from impact or trauma. He thought the testimony "amply" supported the conclusion that she sustained a serious emotional disturbance resulting in physical disability, but that it was insufficient to justify the conclusion that she "actually suffered an electrical shock."
From these observations and the cases cited later in the order, we understand it to have been the judge's view that she was not entitled to recover in the absence of proof that there was "direct physical impact or trauma." In other words, if we understand his reasoning, Mrs. Clark could recover for the damage to her body from an electrical shock, as well as for the symptoms she described if they, too, resulted from an electrical shock, but that the symptoms themselves established only a disturbance of her emotions by what she saw and heard when the line became dislodged and fell and did not prove an actual impact or trauma.
The trial judge referred to the decisions of this court in Kirksey v. Jernigan, Fla., 45 So.2d 188, 17 A.L.R.2d 766, and Crane v. Loftin, Fla., 70 So.2d 574. In the former we recognized the rule specified in the latter and declined to extend it; in the latter we concluded, in effect, that when there is no direct physical impact or trauma, recovery may not be had for damages resulting from fright and anguish in the absence of willful and wanton negligence or, as it was described in the former, malice, entire want of care, or great indifference to the rights of others as distinguished from "simple" negligence.
We think the facts in this case clearly demonstrated that the appellee was negligent, and while we do not disagree with the trial judge's interpretation of the cited cases, or even suggest that we intend to recede from the rule recognized and applied in them, we disagree with the application of the rule in this case.
True, the appellant said she didn't know whether or not she received an electrical shock. She also said she had never received one. The jury could logically have understood these answers when combined as meaning she did not know because she had not had the experience. But the symptoms were sufficient to warrant the conclusion that she was, indeed, shocked instead of having become emotionally upset by fright from the electrical display. It was shown that so much electrical current was out of control that the pumps were put out of commission, a hole was burned in a bucket setting nearby, light bulbs were damaged and the woods at some distance were fired. In the midst of this commotion, when damage was being caused to material or physical objects, a human body could *612 not logically be said to have escaped all injury except to the emotions.
We think too much emphasis has been placed on the absence from the appellant's body of evidence of trauma such as burns, bruises or scars. In our opinion, an electrical shock, or trauma, or impact, may be administered and not leave an outward sign. We dealt with a similar problem in Lyng v. Rao, Fla., 72 So.2d 53. It was a case involving a claim for workmen's compensation benefits and so in all respects was not similar to this controversy. But one aspect of the case is strikingly like the pivotal point in the present one, namely, damage appearing to a human body after exposure to electricity. Lightning struck a building, or near a building, in which a stenographer was working. Before the bolt, she was well and free of the various symptoms that appeared immediately afterward. Aside from the presumption secured to claimants under the Workmen's Compensation Act, F.S.A. § 440.01 et seq., the language of the court on the subject of trauma seems apposite.
We said that the circumstances had occurred so suddenly and the injury had followed so closely, the conclusion of relationship between them was inescapable. We observed that the Deputy Commissioner had erred by limiting evidence of trauma to visible bodily injury.
Such, we think, was the error in this case and we conclude that there was abundant proof, considering all aspects of the occurrence, that the appellant, Mrs. Clark, received an injury to her body as well as her emotions and that the jury properly awarded damages to her and her husband.
The judgment is reversed with directions to enter one for the appellants in accord with the verdict.
Reversed.
TERRELL, C.J., and HOBSON, DREW and THORNAL, JJ., concur.