291 So.2d 593 (1974)
Freddie Laverne GILLIAM and Robert Leo Bradley, Petitioners,
v.
J. Parks STEWART, Individually and As Administrator of the Estate of Jane R. Stewart, Deceased, Respondent.
No. 43363.
Supreme Court of Florida.
January 10, 1974.
Rehearing Denied April 9, 1974.
*594 R. James Stroker of Gurney, Gurney & Handley, Orlando, for petitioner Gilliam.
Monroe E. McDonald of Sanders, McEwan, Mims & McDonald, Orlando, for petitioner Bradley.
W. Ford Duane of Robertson, Williams & Duane, Orlando, for respondent.
DREW, Justice, Retired:
This cause[1] is here by virtue of a certificate[2] of the District Court of Appeal, Fourth District, that the decision below passes upon a question of great public interest, viz:
"Where a person suffers a definite and objective physical injury, i.e. heart attack, as a result of emotional stress, i.e., fright, induced by a defendant's alleged negligent conduct may such person maintain an action against the defendant even though no physical impact from an external force was imposed upon the injured person?"
The undisputed facts out of which this action arose[3] are set forth at length in the decision of the District Court of Appeal and will not be restated here.
The District Court decision concedes the correctness of the action of the trial judge under the established and long standing law of this State in the following language:
"The trial court's entry of the summary judgment is consistent with the judicially established precedent heretofore in effect, namely, that no recovery can be had for mental pain and suffering unaccompanied by any physical injuries in the absence of wantonness, wilfulness or malice... ."
While one question is certified here, viz. whether Florida should recede from the long standing rule of negligence in this area, the greater question  and the one more basically involving the constitutional language "great public interest"  is the action of the majority below in openly overruling previous decisions of this Court. The constitutional system of courts in this State contemplates that only the Supreme Court may overrule its own decisions. This does not necessarily infer that the decisions of this Court are always correct but it does provide a system for the uniform operation of the laws of this State throughout its borders. One of the reasons for allowing certiorari here from the district courts is that a decision of one of the district courts is in conflict with a decision of this Court  or another district court  on the same point of law.
We recognize that in this fast changing world the general welfare requires from time to time reconsideration of old concepts. When the district courts decide that ancient precedents should be overruled, we welcome their views and such should be unhesitatingly rendered but, in cases such as this, it is the duty of the district courts under the plain constitutional language to adhere to the former precedents and then certify the decision to us. This will assure uniformity. A certificate of the district court of appeal that its decision involves a question of great public interest does not vest jurisdiction here. It affords the basis to seek review but it is the petition for certiorari that gives us jurisdiction. In this case, for instance, had the parties elected not to take certiorari here, the decision of the district court *595 would have become final and would have created in that district a decision contrary to others within the State. Judge Reed clearly perceived the error of his brethren in his observation concluding his dissent, viz.
"Finally, if the impact doctrine is to be dispatched in a judicial forum, I would think it better for this court to affirm the trial court on the basis of established precedent and certify the question to the Florida Supreme Court so that it may wield the axe. See Lunney v. Post, Fla.App. 1971, 248 So.2d 504, dissent."
Now, on the merits of the question certified 
Judge Mager's opinion for the majority below ably presents the case for receding from the impact doctrine. No useful purpose will be served by repeating here what he has so ably set forth there. We do not agree that, especially under the facts in this case, there is any valid justification to recede from the long standing decisions of this Court in this area. There may be circumstances under which one may recover for emotional or mental injuries, as when there has been a physical impact or when they are produced as a result of a deliberate and calculated act performed with the intention of producing such an injury by one knowing that such act would probably  and most likely  produce such an injury, but those are not the facts in this case.
The views expressed by Mr. Judge Reed in his dissenting opinion in the lower court, with one exception, are the present views of the majority of this Court and adopted as ours. We do not agree with Judge Reed that the power to change the impact rule is vested exclusively in the Legislature. The impact rule is a judicial creation just as are many other substantive rules of tort law and, since it was judicially created, we are of the view that if this Court should reach the conclusion that such rule was inequitable, impractical or no longer necessary, it may be, judicially, altered or abolished.
The decision below is quashed with directions to reinstate the trial court's summary judgment.
It is so ordered.
CARLTON, C.J., and BOYD and DEKLE, JJ., concur.
McCAIN, J., dissents.
ERVIN and ADKINS, JJ., dissent with opinions.
ERVIN, Justice (dissenting):
I would adopt the majority view of the District Court in this case. On reflection, I am not so sanguine as to be sure that a District Court is blindly required to follow one of this Court's decisions which has been nullified by a decision of the Supreme Court of the United States, change in the Florida Constitution or laws, or perhaps even in a situation where obsolescence has eroded away the judicial force and vitality of a decision of this Court. Not all of our precedents have the saving grace of infallibility, as we have learned from the experience of their being overruled by the Supreme Court of the United States and our progressive penchant for receding from them when we find them no longer meaningful. There is no supremacy clause in the Florida Constitution as there is in the Federal Constitution (Article VI). District Courts have final appellate jurisdiction (Johns v. Wainwright (Fla. 1971) 253 So.2d 873, 874) except as otherwise provided in the Florida Constitution. Consequently District Courts must decide appeals according to the justice of the cause in keeping with controlling law from whatever source.
Under Article V's appellate scheme conflict of decision vis-a-vis the Supreme *596 Court and the District Courts as well as between District Courts inter se is not abjured ab initio. The Supreme Court only has the power to quash a conflicting decision.
ADKINS, Justice (dissenting):
I dissent.
In my opinion, where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, a plaintiff should be allowed to maintain an action and recover damages for such physical consequences to himself regardless of the absence of any physical impact.
In applying this principle, I refer only to a situation in which a defendant's wrongful act, absent any physical impact, causes a mental disturbance which operates internally to produce "definite and objective physical injuries of an ascertainable nature." It does not apply to an action for recovery for mental or emotional disturbance unconnected with a resulting physical injury.
The leading case for the proposition that there can be no recovery for physical results of mental anguish without impact is the old English case of Victorian Railways Commissioners v. Coultas, 8 E.R.C. 405 (P.C. 1888). By a negligent act of the defendant, a collision with a railway train at a level crossing became imminent, but the actual collision was avoided. A nervous shock or mental injury, caused by fright at the occurrence, was held too remote a consequence of the defendant's act to be a ground for damages. One of the questions to be decided by the Court was whether proof of impact was necessary in order to entitle plaintiff to maintain the action. The judgment of their Lordships was delivered by Sir Richard Couch who stated:
"They [Lordships] are of opinion that the first question, whether the damages are too remote, should have been answered in the affirmative, and on that ground, without saying that `impact' is necessary, that the judgment should have been for the defendants." (Emphasis supplied.) (p. 409)
The case of Coyle or Brown v. John Watson, Ltd., (Eng.) (1915) AC 1 [House of Lords], had the effect of overruling the Victorian Railways Commissioners v. Coultas, supra, case. The case dealt with a miner who was ordered to ascend from the pit. He and his fellow workers were kept at mid-landing for an hour and a half until they were able to be raised. The shaft in which they were ascending was the downcast shaft for the air current which ventilated the mine. During the one and one-half hour wait on the landing they were exposed to a cold downdraft and, as a result of this exposure, the miner caught a chill which brought on pneumonia from which he died. The Court held that the death resulted from exposure to the cold air and that there was evidence to support the finding of the arbitrator that the deceased sustained an injury by accident arising out of and in the course of his employment.
Lord Shaw of Dunfermline stated that:
"[C]ountenance appears to be given to the view that the compensatory provisions of the statute cannot be evoked unless injury be caused by `physical impact'. That is, at this time of day, a most serious and, in my humble opinion, a most disturbing and erroneous proposition." (Emphasis supplied.) (pp. 11-12)
Lord Shaw continued and said:
"It must be observed that the statute itself in no way limits the causal connection between accident and disease to cases of physical impact, nor does it treat the connection itself as anything extraordinary... .
"[S]uch a restriction, excluding all cases, however serious,  say of shock and the like  unless physical impact or lesion had occurred, has, in my opinion, no justification *597 in the state of the authorities. The one case cited in its favor is Victorian Railways Commissioners v. Coultas. The case was decided by the Privy Council, and it is observable that the judgment of the Board was in form merely on the point of remoteness of damage. `Their Lordships are of opinion that the first question, whether damages are too remote, should have been answered in the affirmative, and on that ground, without saying that "impact" is necessary, that the judgment should have been for the defendants.'" (pp. 12-13)
Lord Shaw continued and said:
"[I]n England, in Scotland, and in Ireland alike, the authority of Victorian Railways Commissioners v. Coultas, supra, has been questioned, and, to speak quite frankly, has been denied. I am humbly of opinion that the case can no longer be treated as a decision of guiding authority." (p. 13)
The case of Victorian Railways Commissioners v. Coultas, supra, was first recognized and following in this country in Mitchell v. Rochester Ry. Co., 151 N.Y. 107, 45 N.E. 354 (1896). The case denied recovery for a miscarriage allegedly suffered as a result of shock incurred when, as plaintiff was waiting for one of defendant's cars, another of its cars approached and was stopped only when she was standing between the horses and was so frightened she fainted. The Court stated:
"[T]he single question presented is whether the plaintiff is entitled to recover for the defendant's negligence which occasioned her fright and alarm, and resulted in the injuries already mentioned. While the authorities are not harmonious upon this question, we think the most reliable and better-considered cases, as well as public policy, fully justify us in holding that the plaintiff cannot recover for injuries occasioned by fright, as there was no immediate personal injury." (p. 354)
This was stated in keeping with Victorian Railways Commissioners v. Coultas, supra.
The following four cases are out-of-state decisions which hold that recovery for injuries, physical and mental, incurred by fright negligently induced can be had regardless of the absence of physical impact.
The first case, Battalla v. State, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729 (1961), expressly overruled Mitchell v. Rochester Ry. Co., supra. In Battalla, an infant-plaintiff was improperly placed in a ski lift chair causing the infant to become frightened and hysterical upon descent from a mountain ski center. It was alleged that the infant was negligently caused to suffer severe emotional and neurological disturbances with residual physical manifestations.
The Court stated:
"It is our opinion that Mitchell should be overruled. It is undisputed that a rigorous application of its rule would be unjust, as well as opposed to experience and logic." (219 N.Y.S.2d at p. 35, 176 N.E.2d at 730)
In Falzone v. Busch, 45 N.J. 559, 214 A.2d 12 (1965), the plaintiff became ill and required medical attention as a result of defendant's negligently-driven automobile veering across the highway heading in the direction of the plaintiff, coming so close to plaintiff as to put her in fear of her safety. The Supreme Court of New Jersey concluded that the plaintiff should be given the opportunity of submitting proof that she suffered substantial bodily injury and that such bodily injury was the proximate result of defendant's negligence. The Court stated the rule as being, where negligence causes fright from a reasonable fear of immediate personal injury, which fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover if such bodily injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical *598 injury rather than fright. This case went on to elaborate the basic reasons once given for the impact requirement. The Court stated in a well-written opinion that these reasons are no longer present and, accordingly, did away with the impact requirement.
In Niederman v. Brodsky, 436 Pa. 401, 261 A.2d 84 (1970), the Supreme Court of Pennsylvania held that a pedestrian who allegedly suffered severe heart disability when a motorist skidded onto the sidewalk and struck his son, could recover from the negligent motorist if he proved allegations that a negligent force was aimed at him and put him in personal danger of physical impact, and that he actually did fear the force despite the fact that he suffered no physical impact.
The case of Daley v. LaCroix, 384 Mich. 4, 179 N.W.2d 390 (1970), involved an action by a minor, by his next friend, for damages resulting from alleged negligence of defendant motorist in an action for property damage. The Supreme Court of Michigan, in its decision, handed down the following rule of law:
"We hold that where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock." (p. 395)
The following two out-of-state cases are interesting in that they are factually similar to the situation we are considering.
In Colla v. Mandella, 1 Wis.2d 594, 85 N.W.2d 345 (1957), the Supreme Court of Wisconsin considered an action by a wife for the death of her husband from heart failure allegedly resulting from fright caused by a driverless truck rolling into the side of their house near windows of a bedroom in which her husband had been sleeping. The Supreme Court held that even though there had been no direct physical impact of the truck on the husband's person, the facts presented indicated that negligence of the truck driver in parking the truck was the proximate cause of death and, therefore, such precluded summary judgment for the driver. Mr. Justice Wingert, in handing down his majority opinion, stated:
"Such recovery is not defeated here by the fact that there was no direct physical impact of the truck on Colla's person. The courts are getting away from the requirement of physical impact to sustain liability in fright and shock cases, and the majority no longer require impact, while those courts which retain the impact requirement go very far in finding sufficient impact from the most trivial contact." (p. 347)
In Trent v. Barrows, 55 Tenn. App. 182, 397 S.W.2d 409 (1965), the Court of Appeals of Tennessee held that evidence raised the fact question as to whether a home owner, whose fast heart condition accompanied by chest pains allegedly occurred immeditely after her home was violently struck by an automobile near the front window where the owner was standing, had suffered physical injury and pain as a result of the negligence of the driver. The Court took into consideration the prior Tennessee case of Memphis St. Ry. Co. v. Bernstein, 137 Tenn. 637, 194 S.W. 902, and stated:
"In that case, after stating that the authorities agreed that `mere fright cannot be made the basis of a cause of action,' the opinion continues:
"`The cases are not in harmony as to the right of a plaintiff to recover for physical pain and suffering resulting from fright. Many decisions deny this right. We think, however, the better reasoned cases hold that there may be a recovery for bodily pain and suffering proximately following fright *599 occasioned by the negligence of the defendant.
"`The suit, under such circumstances, is based upon the physical pain and suffering endured by the plaintiff, and not upon the fright itself. Such pain and suffering of course must be the proximate result of the negligence... .'" (Emphasis supplied.) 397 S.W.2d 409, pp. 410-411.
The following cases illustrate this Court's thinking in the development of the so-called "impact rule" involving recovery in negligence cases resulting in mental pain and suffering.
International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893), involved mental pain and suffering as the result of the failure of a telegraph company to promptly deliver a telegraphic message. No recovery was permitted.
This Court stated:
"In the case under consideration, the plaintiff's suit, though sounding in tort, is for compensation only, for the breach by the defendant telegraph company of its contract promptly to deliver a telegram summoning him to the deathbed of his wife. His only injury, resulting directly from such breach of contract, was mental suffering and disappointment in not being able to attend upon his wife in her last moments, and to be present at her funeral. The resultant injury is one that soars so exclusively within the realms of spirit land that it is beyond the reach of the courts to deal with, or to compensate by any of the known standards of value." (Emphasis supplied.) (p. 152)
The case of Dunahoo v. Bess, 146 Fla. 182, 200 So. 541 (1941), dealt with the careless and negligent manner in which the body of the plaintiff's deceased wife was handled, the Court finding no recovery for mental anguish unconnected with physical injury. The Court stated that:
"The plaintiff bases his right of action on a breach of contractual duty and ordinary or simple negligence in the discharge of that duty and as a proximate result thereof claims he has suffered financial loss and mental anguish." (p. 542)
The Court, in refusing recovery, stated that it had based its decision on the principle of law enumerated in International Ocean Tel. Co. v. Saunders, supra.
The case of Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950), also involved the manner in which the dead body of plaintiff's child was handled. The Court, while reaffirming the rule as it related to a negligent breach of contract, refused to extend the rule to a case founded clearly in tort, where the wrongful act is such as to imply malice. Mr. Justice Roberts in his majority opinion stated the following:
"This Court is committed to the rule, and we reaffirm it herein, that there can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved." (p. 189)
This statement was based on the previous decisions of Dunahoo and International Ocean Tel. Co. In this decision, the Court held that recovery would be allowed where the element of malice is shown, as stated in the words of Mr. Justice Roberts:
"But we do not feel constrained to extend this rule to cases founded purely in tort, where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages." 45 So.2d 188, 189.
In the case of Crane v. Loftin, 70 So.2d 574 (Fla. 1954), the Court was concerned with a plaintiff who sought damages for personal injuries alleged to have resulted *600 from fright and mental anguish unaccompanied by direct physical impact. In this case, the plaintiff had to flee from her automobile in order to avoid being struck by a locomotive which was alleged to have been operated at an excessive speed across a heavily-traveled highway. The Court, in citing the case of Kirksey v. Jernigan, supra, said:
"It has been recognized in this jurisdiction that where the facts giving rise to an action in tort for personal injuries are such as to reasonably imply malice, or where, from the entire want of care or attention to duty, or great indifference to the persons, property or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages, recovery for mental pain and anguish unconnected with direct physical impact or trauma may be authorized." (Emphasis supplied.) (70 So.2d 574, 575)
In Clark v. Choctawhatchee Electric Co-operative, 107 So.2d 609 (Fla. 1958), this Court permitted the plaintiff to recover for an emotional disturbance caused by an electrical shock. There were no burns on the body of the plaintiff but she did feel a shock.
In referring to the decisions of Kirksey v. Jernigan, supra, and Crane v. Loftin, supra, the Court stated that:
"[W]hen there is no direct physical impact or trauma, recovery may not be had for damages resulting from fright and anguish in the absence of willful and wanton negligence or, as it was described in the former, malice, entire want of care, or great indifference to the rights of others as distinguished from `simple' negligence.
......
"We think the facts in this case clearly demonstrated that the appellee was negligent, and while we do not disagree with the trial judge's interpretation of the cited cases, or even suggest that we intend to recede from the rule recognized and applied in them, we disagree with the application of the rule in this case.

......
"We think too much emphasis has been placed on the absence from the appellant's body of evidence of trauma such as burns, bruises or scars. In our opinion, an electrical shock, or trauma, or impact, may be administered and not leave an outward sign." (Emphasis supplied.) 107 So.2d 609, 611-612.
LaPorte v. Associated Independents, Inc., 163 So.2d 267 (Fla. 1964) was an action for damages brought against a garbage collector because of damages suffered when an agent of the defendant hit a pet dog of the plaintiff, causing its death. Plaintiff sought compensatory and punitive damages. The trial judge charged the jury that plaintiff could recover for alleged mental suffering. This Court, in allowing such a recovery, discussed the earlier case of Kirksey v. Jernigan, supra, saying:
"The Supreme Court reversed the judgment and undertook to distinguish cases involving mental suffering from intentional or malicious torts and those in which mental suffering may have resulted from negligent acts. This court acknowledged its commitment to the rule that there could be no recovery for mental pain unconnected with physical hurt in an action arising from `negligent breach of a contract [when] simple negligence [was] involved.'
"The court then remarked that the rule would not, however, be extended to cases purely in tort `where the wrongful act is such as ... reasonably [to] imply malice,' or when from `great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages.'" 163 So.2d 267, 268.
*601 This Court held that the element of the owner's mental suffering as the result of the malicious destruction of her dog was properly submitted to the jury for its consideration in assessing damages.
The following two cases come from the Second District Court of Appeal. In the case of Carter v. Lake Wales Hospital Association, 213 So.2d 898 (Fla.App.2d, 1968), the parents of a baby brought an action against a hospital to recover actual and punitive damages for mental pain and anguish unconnected with any physical injury. The basis of the suit was that the hospital had permitted the baby of the parents to be taken home by a third person under the mistaken belief that the baby was that of the third person. The complaint proceeded on theories of negligent breach of contract and gross negligence. The District Court of Appeal, in affirming the trial court's dismissal of the third amended complaint for failure to state a cause of action, followed the principles of law as stated in Kirksey, Dunahoo and International Ocean Tel. Co. The Court held that there was no cause of action since recovery cannot be had for mental pain and anguish unconnected with any physical injury in an action arising from the negligent breach of a contract in which simple negligence is involved.
In Way v. Tampa Coca Cola Bottling Company, 260 So.2d 288 (Fla.App.2d, 1972), the District Court reversed the trial court and held that a consumer was entitled to recover on a theory of implied warranty and negligence. The case dealt with an action against the soft drink manufacturer by a consumer who, while attempting to get the contents of a soft drink bottle out by sucking upon it, discovered a foreign substance that resembled a rat with hair sucked off and who then became nauseated and went outside and vomited. The Court stated that in rendering its decision it was not unmindful of its decision in Carter v. Lake Wales Hospital Association, supra, and the decision of the Supreme Court in Kirksey v. Jernigan, supra. The Court went on to state that these cases are certainly distinguishable on their facts.
In reference to the Supreme Court's decision in Kirksey v. Jernigan, supra, the District Court stated:
"The court in that case affirmed the rule that no recovery could be had for mental pain and anguish unconnected with physical injury but they nevertheless allowed the plaintiff to recover for mental pain and anguish on other theories. This is prevalent throughout all the cases. The courts have affirmed the rule but on the factual situation have allowed recovery. We simply think the time has come,... that in factual situations such as was presented in the instant case, the trend is toward the protection of the ultimate consumer and he will be allowed to recover whatever the theory." (Emphasis supplied.) 260 So.2d 288, 289-290
So it is that the strict requirement of impact, as originally set forth in the case of International Ocean Telegraph Co. v. Saunders, supra, has gradually been eroded through the years. We have affirmed the rule but on the factual situation have allowed recovery. In the case of Kirksey v. Jernigan, supra, although acknowledging our commitment to the rule that there could be no recovery for mental pain unconnected with physical hurt in an action arising from a negligent breach of a contract when simple negligence was involved, we allowed recovery and refused to extend the rule to a case founded purely in tort, where the wrongful act was such as to imply malice. In Lyng v. Rao, 72 So.2d 53 (Fla. 1954) and Clark v. Choctawhatchee Electric Co-operative, supra, recovery was allowed without testimony of impact where the facts, together with the genuineness of the injury, demonstrated that there must have been an impact even though the plaintiff may not have been conscious of it. Therefore, we continued to pay homage to the impact requirement by indulgency in a legal fiction and implying impact. It is now time to "tell it like it is."
*602 The impact rule was discussed in a commentary prepared by Michael A. Rider, 25 U.Fla.L.Rev. 368 (Winter 1973). The following appears in this article:
"Although the doctrine was observed by the weight of authority in the United States at the turn of the century it has so rapidly declined in popularity that today more than thirty jurisdictions no longer require any contemporaneous physical impact to recover for negligently inflicted emotional distress. However, ten states, including Florida, still adhere to the impact requirement. (p. 369)
......
"If Florida abandons the impact rule it will likely follow other states in adopting the more flexible `zone-of-danger' limitation. No impact is required under this doctrine. The plaintiff suffering physical manifestations resulting from mental distress as a result of the defendant's negligence, and who was in close enough proximity to the negligent act as to be within its zone of danger, is allowed to recover. Since the location of the zone is a question of fact to be determined by the jury, this doctrine is clearly superior to the impact rule. The zone-of-danger doctrine also adopts the foreseeability-reasonable man criteria to limit the defendant's liability. The danger of fraud is mitigated by requiring that the mental distress manifest itself in some observable physical injury. Although California has rejected the zone-of-danger rule as being arbitrary, it is doubtful that other jurisdictions are ready or willing to follow that precedent.
"Courts have historically resorted to various arguments to justify the failure to compensate negligently inflicted emotional trauma. Perhaps at one time many of the policy considerations were valid, but the maintenance of the impact rule long after its justification has disappeared is illogical. Mere difficulty of proof or possibility of fraud should not bar an aggrieved plaintiff from the opportunity to prove his injury. Fallibility is inherent in the judicial process, and the inability to prejudge every future case is not a sufficient justification to bar all claims. The death knell of the impact rule has tolled. None of the feared dangers nor policy considerations excuses the frustration of natural justice in denying a plaintiff an opportunity to prove that his injuries are just as real, just as painful, and just as disabling as if he had suffered an actual or technical impact." (pp. 373-374)
The time has come for Florida to follow the decisions of the majority of the courts in the United States that have eliminated an impact requirement when a person suffers a substantial physical injury which is a natural result of fright and which follows closely in point of time to the external trauma. See Annot., 64 ALR2d 100; Prosser on Torts (3d Ed.) § 55, pp. 349-352.
There have been three basic arguments which are considered the underlying reasons for adhering to the impact doctrine. The first deals with medical science's difficulty in proving causation between the claimed damages and the alleged fright. The second involves the fear of fraudulent or exaggerated claims. Finally, there is the concern that such a rule would precipitate a veritable flood of litigation. Judge Mager of the District Court of Appeal, Fourth District, in his opinion in the case sub judice, 271 So.2d 446, 472, et seq., adequately discusses these reasons. It is apparent from his opinion that the reasons for the rule no longer exist.
In rejecting the impact rule, there should be certain limitations for purposes of clarity and application in allowing recovery for physical injuries caused by fright in the absence of contemporaneous physical impact. There should be no recovery except by those who were within the area of physical risk (or "zone of danger") from defendant's negligent act. Other limitations should also be imposed.
*603 First, there must be shown a substantial physical injury as discussed in Falzone v. Busch, 45 N.J. 559, 214 A.2d 12 (1965):
"[W]here negligence causes fright from a reasonable fear of immediate personal injury, which fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, [emphasis ours] the injured person may recover if such bodily injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical injury rather than fright. Of course, where fright does not cause substantial bodily injury or sickness, it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability." (p. 17)
Second, the resultant physical injury should follow as a natural result of fright, as discussed in Daily v. LaCroix, 384 Mich. 4, 179 N.W.2d 390 (1970):
"Further, plaintiff has the burden of proof that the physical harm or illness is the natural result of the fright proximately caused by defendant's conduct. In other words, men of ordinary experience and judgment must be able to conclude, after sufficient testimony has been given to enable them to form an intelligent opinion, that the physical harm complained of is a natural consequence of the alleged emotional disturbance which in turn is proximately caused by defendant's conduct." (p. 395)
Third, in the absence of a defendant's specific knowledge of a plaintiff's unusual sensitivity, no recovery should be allowed for hypersensitive mental disturbance where a normal person would not have been so affected under the circumstances.
Finally, the injuries should not only be proximately caused by the negligence of the defendant, but should also follow closely in point of time to the negligent conduct, as discussed in Stewart v. Gilliam, 271 So.2d 466 (Fla.App.4th, 1972).
The ears of justice should not be pecularily acute to cases involving impact, but rather, an injured citizen should be given the opportunity to be heard despite the lack of impact. Justice requires the doors of the Court to be opened sufficiently wide to accomplish such ends.
NOTES
[1] The decision below appears in 271 So.2d 466.
[2] Florida Constitution, Article V, Section 4(2) F.S.A. Rule 4.5(c) (6), 32 F.S.A., F.A.R.
[3] The cause was terminated in the trial court by summary judgment in favor of defendants.